UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JOSEPH P. MAINS, )
)
    *Plaintiff,* )
)
v. ) No. 2:17-CV-170-RLJ-MCLC
)
MIKE REECE, Superintendent, )
)
    *Defendant.* )

## MEMORANDUM OPINION

Acting pro se, Joseph P. Mains ("Plaintiff"), a former prisoner in the Johnson County Correctional Facility [JCCF] in Mountain City, Tennessee, filed this civil rights complaint for damages under 42 U.S.C. § 1983 [Doc. 1]. Pursuant to a screening order, *see* 28 U.S.C. § 1915A(a) (requiring a court to screen a prisoner complaint for redress from a governmental entity or officer), the Court allowed Plaintiff to amend his claim against one defendant, Mike Reece, the JCCF Superintendent [Doc. 8 at 9-10]. The Court dismissed all other claims and defendants for failure to state a claim entitling Plaintiff to relief under § 1983 [*Id.* at 9]. Plaintiff responded by filing an amended complaint [Doc. 9] that now must be screened to determine whether it states a claim for relief under § 1983. 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

### I.     Factual Background

Plaintiff was allowed to amend his claim for denial of medical care against Defendant Reece and has elaborated on that claim in his amended complaint by advancing allegations against Jail Administrator Lisa Stout and Nurse Misty Issacs, who are identified as additional Defendants purportedly involved in the incident complained of. The Court assumes familiarity with the facts surrounding Plaintiff's claims and relates only those facts necessary to screen the amended complaint.

In July 2016, there was a scabies outbreak in Alpha # 9, the cell in which Plaintiff was housed at the JCCF. Defendant Nurse Misty Isaacs diagnosed the inmates, including Plaintiff, as having contracted scabies. Defendant Issacs told the inmates that she would order vermeclyfin"[1] from the pharmacy to treat them because the quantity of that medication on hand at the JCCF was insufficient to treat all inmates. However, approximately one hour after weighing the inmates for purposes of supplying them with the correct dosage of the medication, Nurse Issacs returned to Alpha pod and informed the inmates that "the sheriff (Mr. Mike Reece) said he would only pay for the medicine for the (3) three that were broke out the worse" [Doc. 9 at 4].

Plaintiff was not included in the group of three inmates who received ivermectin [*Id.*]. Instead, Plaintiff was given packets of hydrocortisone cream, a 25 mg. Benedryl capsule, and a Prednisone/Medrol packet to treat his scabies infestation [*Id.* at 5]. None of those medications worked for him, and the Benedryl worsened his symptoms [*Id.* at 5-6]. The three inmates who received the ivermectin fared no better than did Plaintiff because the medication did not work for them either [*Id.* at 5].

Plaintiff continued to suffer from scabies and to complain about his condition in sick call forms he filed [*Id.*]. One Friday morning, inmates complained to Nurse Issacs about itching and other scabies symptoms, but she retorted that she had a wedding to attend and had no time to deal with their complaints [*Id.* at 6]. Nurse Issacs asked Plaintiff to collect the names of the inmates who were itching and she gave everyone Benedryl [*Id.*]. On Sept. 21, 2016, Plaintiff filed a grievance concerning the scabies infestation in Alpha pod and, within an hour after the grievance was taken to the office and

---

[1] As noted in the screening order, the Court understands that the medication that is the subject of this lawsuit is ivermectin, a medication that the CDC website observes is not FDA-approved for treatment of scabies but which, in oral form, has been used successfully in treating that malady. https://www.cdc.gov/parasites/scabies/health_professionals/control.html (last visited Feb. 11, 2019).

submitted to Defendant Lisa Stout, Plaintiff was released from the JCCF [*Id.* at 7]. Plaintiff went directly to the Health Department, where he reported the scabies outbreak at the JCCF and was given vaccines for Hepatitis A and B and instructed to go to the after-hours clinic at the hospital [*Id.* at 7]. Plaintiff followed those instructions and was treated for scabies at the Johnson County Emergency Room [*Id.* at 7-8].

Plaintiff was re-incarcerated in the JCCF in mid-to-late March of 2017, and was provided five vermeclyfin tablets, but the medication was ineffective [*Id.* at 8-9]. On May 10, 2017, Plaintiff was released again from the JCCF, but he was still itching and in torment [*Id.* at 9]. In July of 2017, Plaintiff went to the Emergency Room and consulted professionals who prescribed him Permethrin cream. Plaintiff did not pick up his prescription at the pharmacy because he could not afford the $52.50 cost of the medication. Plaintiff was furloughed from the JCCF for seven days and, when he reported back to the jail, he told the nurse who examined him that he was still itching and struggling to free himself of scabies [*Id.* at 9-10]. From the next allegations, the Court infer that, at some point thereafter, Plaintiff was released from the JCCF.

On September 1, 2017, Plaintiff was arrested and taken to the JCCF, where he reported to staff that he still had scabies [*Id.* at 10]. On September 7, 2017, Nurse Issacs diagnosed Plaintiff as having a "highly developed case of the scabies," twice directed staff to change Plaintiff's bedding and clothing (it was not done and Plaintiff slept in contaminated bedding and wore contaminated clothing for 18 days), and dispensed Plaintiff two tubes of Permethrin cream 5% that bore an expiration date of June 2017 [*Id.* at 9-10]. Plaintiff applied the cream, as Defendant nurse instructed, though he pointed out to her that both tubes of cream had expired [*Id.* at 10-11]. Nurse Issacs took one tube of the Permethrin cream, telling Plaintiff that she needed it to order new medication, which "went undone" [*Id.* at 11].

3

Plaintiff handed a grievance to Defendant Stout who warned him "not to come near her and then threatened to mace [him]" [*Id.* at 12]. Plaintiff was locked down in Alpha # 4, where another inmate physically assaulted Plaintiff through the opening of Plaintiff's cell door, which "may or may not have been a deliberate plot by officials to hinder [Plaintiff's] hand of penmanship" [*Id.*]. Plaintiff complained to Congressman Phil Roe about the problems he had encountered at the JCCF and asked Congressman Roe to intervene on his behalf [*Id.*]. On October 2, 2017, Plaintiff was transferred from the JCCF to the Unicoi County jail [*Id.*].

## II. Law and Analysis

The Cruel and Unusual Punishment provision of the Eighth Amendment protects prisoners from the infliction of "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[D]eliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain," which violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

An Eighth Amendment claim is composed of two parts: an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and a subjective component, which requires him to show a sufficiently culpable state of mind—one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994). A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004).

Deliberate indifference involves action or inaction that is beyond negligence. *See Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994) ("[T]he conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent

to punish."). A sufficiently culpable mental state — one of deliberate indifference—may be evinced by showing that a defendant official knows of, but disregards, an excessive risk to an inmate's heath. *Farmer*, 511 U.S. at 837. That is, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Yet, a prisoner whose claims are based on a theory of medical negligence has not stated a claim under § 1983 because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. Also, no claim is stated where some medical treatment is given an inmate and the dispute is over the adequacy of such treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). To illustrate this point, consider that "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Some medical treatment, however, may be "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5; *see Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002) (observing that "when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference") (citation and internal quotation marks omitted).

The Court assumes for purposes of resolution of the issue that Plaintiff's scabies constituted a serious medical need. Yet, in the screening order, the Court cited to *Estelle* and *Westlake* for the guiding principles that the Eighth Amendment is not offended by either medical malpractice or a dispute over the adequacy of a prisoner's medical treatment when some medical treatment is given [Doc. 8 at 9-10]. The above detailed narration of Plaintiff's medical claim against Defendants Reece and Issacs shows that Plaintiff's claim amounts, at most, to a tort claim of medical negligence

predicated on Defendants' failure to furnish Plaintiff ivermectin when Plaintiff was first diagnosed as having scabies and in the months that followed the diagnosis.

Plaintiff's scabies eruptions were treated with hydrocortisone cream, Benedryl, and a Prednisone/Medrol packet. When Plaintiff sought medical care by filing sick call forms, there is no indication that he was denied such care. While Plaintiff maintains that the medications he received during July-September of 2016 at the JCCF were ineffective and that he needed to be treated with a medication that was not FDA-approved to treat scabies, he also indicates that, when he later was re-incarcerated in that facility, he received ivermectin for his scabies flareups but that the medication that he had long sought did not work for him.

The Constitution does not entitle Plaintiff "to demand specific care. [An inmate] is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Fisc. v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972) (The Eighth Amendment does not require every request for medical care made by prisoner to be honored or the courts "to engage in a process of second-guessing in every case the adequacy of medical care that the state provides."). As long as the treatment actually afforded an inmate squares with constitutional standards, a prisoner has no right to demand a particular treatment. *See Estelle*, 429 U.S. at 106-07; *McCracken v. Jones*, 562 F.2d 22 (10th Cir. 1977); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (finding that a disagreement between prison physician and physician who originally prescribed medications is not of constitutional magnitude).

The medical care Plaintiff was furnished in connection with his scabies did not offend the Eighth Amendment. The Court concludes that Plaintiff's claims against Defendants Reece and Issacs are bottomed on medical negligence and not on deliberate indifference. *See Presley v. Webb*, No. 14-2705-JDT-TMP, 2015 WL 5718060, at *6 (W.D. Tenn. Sept. 29, 2015) (finding that Plaintiff's

disagreement with the "extent, duration, or prescription that he preferred" to treat his scabies was at most medically negligent treatment not indifference). To the extent that Plaintiff is implying that the cost of the medication wrongfully influenced Defendant Reece's initial decision to furnish ivermectin to only three inmates, and not to Plaintiff, the "deliberate indifference standard does not guarantee prisoners the right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society." *Miller v. Blackwelder*, No. 4:07-CV-9, 2008 WL 2940534, at *6 (E.D. Tenn. July 24, 2008) (quoting *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) (co-pay policy))).

The only assertions Plaintiff makes against Defendant Jail Administrator Stout is that she did not act favorably on his grievances. Defendant Stout's response to one grievance regarding his scabies was to have him released from confinement in the JCCF, rather than to furnish him with medical care. Defendant Stout's response to another grievance he tried to hand her as she stood at his cell door was to threaten to mace him if he came near her.

This Circuit has made it clear that supervisors cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). This is true even when a defendant fails to act on a grievance involving an inmate's complaints of mistreatment. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a

7

grievance.") (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiff does not state a claim against Defendant Jail Administrator Stout for failure to respond favorably to his grievances.

Similarly, a jail official's use of threats, while unprofessional and ill-advised, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (finding that neither verbal abuse nor harassment qualify as punishment for Eighth Amendment purposes); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (observing that harassment and verbal abuse do not constitute the type of infliction of pain that the Constitution prohibits); *Thaddeus-X v. Langley*, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (noting that verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."). A plaintiff must show that a federal right was actually denied and not merely threatened to be denied. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989). Plaintiff does not state a claim against Defendant Stout for threatening to mace him.

Finally, Plaintiff's amended complaint contains allegations regarding the treatment to which other JCCF inmates were subjected [Doc. 9 at 5-6]. As the Court stated in its earlier screening order, "a plaintiff must assert his own rights and . . . he cannot base his claims for relief on the legal rights or interests of a third party, *Warth v. Seldin*, 422 U.S. 490, 499 (1975)" [Doc. 8 at 9]. Plaintiff lacks standing to assert such claims.

### III. Conclusion

Plaintiff has failed to state an Eighth Amendment claim against Defendants for denial of medical care or for any other constitutional violations, and his amended complaint will be dismissed for failure to state a § 1983 claim. 28 U.S.C. §§ 1915(e)(2) and 1915A. For those same reasons, the Court **CERTIFIES** that any appeal from this decision and accompanying judgment would not be taken in good faith and would be frivolous. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

Therefore, if Plaintiff files a notice of appeal, he should either pay the full appellate filing fee of five-hundred, five dollars ($505.00) or submit a motion for leave to appeal *in forma pauperis* and a certified copy of his inmate trust account statement showing the transactions in the account for the last six months. 28 U.S.C. § 1915(a)(2).

This dismissal will count as a "strike" under the three-strikes provision in 28 U.S.C. § 1915(g). A separate judgment order will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge